The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillip Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the alleged injury which is the subject of this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all times relevant to this claim, the employer-employee relationship existed between plaintiff and defendant.
3. Defendant was a duly-qualified, self-insured employer under the Workers' Compensation Act at all times relevant to this claim.
4. Plaintiff's average weekly wage may be determined from an accurate wage chart, Industrial Commission Form 22, prepared by the employer. This yields an average weekly wage of $406.42 and a compensation rate of $270.96.
5. Plaintiff was out of work beginning May 3, 1995, and had not returned to work for the defendant as of the date of the hearing before the Deputy Commissioner.
6. The parties have agreed to limit the Industrial Commission's decision to compensation due as of April 13, 1995.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is 53 years old. She has been employed by defendant, a textile manufacturer, since 1974. For several years until May 2, 1994, when she left work after her injury, plaintiff worked as a quilter operator, sewing comforters on an industrial machine.
2. Prior to April 1994, plaintiff had never experienced problems with low back pain. On April 21, 1994, plaintiff was treated by Dr. Clarence Beavers at Dayspring Family Practice for a urinary tract infection. Dr. Beavers noted that plaintiff had a low backache and polyuria. Dr. Beavers prescribed medication and took plaintiff out of work for two days.
3. Plaintiff's principal duty as a quilter operator was to operate a quilting machine to quilt comforters manufactured by the defendant. The quilting machine consisted of a control box and sewing machine attached to an iron bar with metal slots underneath. A computer controlled the speed of the machine and the pattern sewn on the comforter.
4. Plaintiff pinned comforters around a square iron quilting frame placed on a large table three feet away from the machine. A comforter and frame together weighed approximately 50-60 pounds. Once the comforter was secured on the frame, plaintiff reached under the machine and pulled a completed comforter and frame out of the slots with one hand, placing it onto the table.
5. Plaintiff immediately lifted and pushed the unsewn comforter into the slots using a bar on top of the table. Plaintiff pushed the start button on the control box and the machine sewed the pattern onto the comforter. Plaintiff unpinned the finished comforter from the frame and folded it, placing it into a box.
6. Other employees, called fixers, adjusted the machine and frames and changed comforter sizes. At times following a size change, the frames would be difficult to pull out of the metal slots or guides on the machine.
7. Plaintiff returned after her time out of work with the urinary tract infection on April 27, 1994. Plaintiff believed that this date was April 25, 1994. On her first day back at work, plaintiff pulled hard with one hand on a heavy quilting frame in the machine when she felt a pain like a grabbing in her lower back. She went to the bathroom and laid down on a couch until she could continue to work.
8. Plaintiff reported her injury to her supervisor, Sue Williams, on the same day. Ms. Williams told plaintiff that her pain could have been due to her urinary tract infection and did not fill out an accident report.
9. Plaintiff reported to another supervisor, Sarah Carter, that her back hurt every time she pulled or lifted the frames. Ms. Carter told plaintiff that "if she didn't get any better she may have to go out on leave and that she may have come back too soon."
10. Plaintiff continued to work for the next three or four days. Her back continued to hurt. On May 2, 1994, plaintiff was lifting, pushing and pulling on the frames when the pain in her back became severe.
11. Another quilter operator, Linda Hairston, spoke with plaintiff soon after the pain became severe. Plaintiff called Ms. Williams over and told her and Linda Hairston that she had very severe back pain. Ms. Williams told plaintiff to go to the doctor or to the emergency room.
12. Plaintiff left work and went to Dayspring Family Practice. Because an appointment was not available immediately, plaintiff went to the emergency room at Morehead Memorial Hospital.
13. Plaintiff had x-rays taken of her lumbar spine which showed spondylolisthesis and disc space narrowing of L1-2 level. Plaintiff was told she had experienced a strain of the ligaments and muscles that support the spine. She was prescribed a muscle relaxant and anti-inflammatory medication and told to use heat and to follow up with Dr. Beavers at Dayspring Family Practice.
14. Dr. Terry Daniels at Dayspring Family Practice treated plaintiff on May 6, 1994. Dr. Daniels diagnosed a lumbar sprain, kept plaintiff out of work and continued her medications. On subsequent visits on May 12, 1994 and May 20, 1994, Dr. Daniels and Dr. Kevin Howard found continued tenderness. In his handwritten notes on the May 20 visit, Dr. Howard noted that the problem was "[secondary] to pulling frame" and prescribed Valium for plaintiff.
15. On May 23, 1994, Dr. Daniels again evaluated plaintiff's condition and reported it to be improved. Dr. Daniels' note indicated that plaintiff "thinks she may have injured her back at work. Has not reported this to [Fieldcrest] as [workers' compensation] injury and she only told me about this today. She thinks this may have been done when she was pulling on some machinery." Dr. Daniels told her to report to Fieldcrest Medical and let them determine if the injury was compensable. Plaintiff was sent to physical therapy.
16. On May 24, 1994, plaintiff went to Fieldcrest and reported to nurse Ann Hall. Ms. Hall recorded that plaintiff "states she is being referred by Dr. Daniels for back strain. States she feels it is work-related. States she had been rx'd for kidney px. and then while she was working and lifting frames, she felt pain in her lower back. States she told her supr. this but was told to see her dr. or go to ER because `the supr. thought it was due to my back pain from kidneys.' Adv. she has right to file FCR-506 and W/C will make decision on compensability."
17. Sarah Carter, a supervisor, completed plaintiff's report of injury on May 24, 1994. The report stated "I was pulling frame and it felt like a knot in my back hurting, different from backache with kidney infection. Back had been hurting from kidney infection."
18. At plaintiff's next office visit on June 3, 1994, Dr. Daniels reported that plaintiff stated that she was told that her back pain may have been a kidney infection by her supervisor and that is why she went to the emergency room instead of reporting it to Medical at defendant-employer. He reported findings of tenderness in her back and recommended continued physical therapy three times a week.
19. Dr. Daniels' objective findings remained essentially the same on June 16, 1994, when he released plaintiff to return to light duty. Dr. Daniels limited plaintiff to lifting of no more than ten pounds. Defendant did not have work for plaintiff within her restrictions.
20. On July 20, 1994, Dr. Daniels noted that plaintiff was experiencing increasing pain and recommended an MRI. The MRI performed on July 27, 1994 showed disc protrusions present at L1-2, L4-5, and L5-S1 which was exacerbated by spinal stenosis and Grade I pseudospondylolisthesis of L4 on L5.
21. Dr. Daniels referred plaintiff to Dr. David Kelly, a neurosurgeon, on July 29, 1994. Dr. Kelly first saw plaintiff on August 15, 1994. His office note refers to a May 2, 1994 accident at work. Dr. Kelly recommended surgery because of the slippage of the bone and the marked narrowing of the spinal canal.
22. Dr. Kelly performed surgery for the relief of plaintiff's pain on September 14, 1994 at the L1-2 and L4-5 levels along with the insertion of a pedicle screw fixation and a bone graft. Plaintiff was not able to work from August 15, 1994 through April 13, 1995.
23. As a result of plaintiff's April 27, 1994 incident, she was unable to earn wages in her employment with defendant-employer or in any other employment from May 3, 1994 through April 13, 1995.
24. The medical treatment for plaintiff's back injuries was necessary to provide relief and will tend to lessen plaintiff's period of disability.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On April 27, 1994, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer, in that she injured her back as a result of a specific traumatic incident while performing her assigned work duties. This injury by accident aggravated her pre-existing spondylolisthesis and spinal stenosis causing severe pain and resulting in surgery. G.S. § 97-2(6).
2. As a result of her April 27, 1994 injury by accident, plaintiff is entitled to compensation for temporary total disability at the rate of $270.96 from May 3, 1994 through April 13, 1995. G.S. § 97-29.
3. Plaintiff is entitled to payment of all medical expenses incurred or which will be incurred in the future as a result of her injuries, for as long as such treatment may reasonably be required to effect a cure, give relief and will tend to lessen plaintiff's period of disability. G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay compensation to plaintiff at the rate of $270.96 per week for her temporary total disability from May 3, 1994 through April 13, 1995. This compensation has accrued and shall be paid to plaintiff in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the April 27, 1994 injury.
3. A reasonable attorney's fee in the amount of twenty-five percent of the compensation awarded herein is approved for plaintiff's counsel. This fee shall be deducted from the compensation awarded and paid directly to counsel for the plaintiff.
4. Defendant shall pay the costs.
This the ____ day of December 1996.
 S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ________________________ DIANNE C. SELLERS COMMISSIONER
S/ ________________________ COY M. VANCE COMMISSIONER
LKM/bjp